MOORE, Circuit Judge, concurring.
I concur in the judgment of the majority, but I write separately with respect to Part II.A.l.a of Judge Ryan’s opinion because I believe that the promissory notes at issue in this case, like the stock purchase warrants, should be characterized as securities for the purpose of federal and Tennessee securities laws.
As the majority has explained, Plaintiff Jack Bass cannot sustain his securities claims unless he shows, as a threshold matter, that the financial instruments at issue in this case qualify as securities within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934. See Reves v. Ernst & Young, 494 U.S. 56, 60, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). The definition of “security” contained in § 2(a)(1) of the Securities Act of 1933[1] states that a security includes:
[A]ny note, stock, treasury stock, bond, debenture, evidence of indebtedness, ... or, in general, any interest or instrument commonly known as a “security,” or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.
15 U.S.C. § 77b(a)(l); see also 15 U.S.C. § 78c(a)(10).
The Supreme Court has adopted the “family resemblance” test for determining whether certain promissory notes qualify as securities. Reves, 494 U.S. at 63-66, 110 S.Ct. 945. In Reves, the Court was careful to point out that, according to the family resemblance test, every note is initially presumed to qualify as a security. Id. at 65-67, 110 S.Ct. 945. Indeed, this presumption that all notes are securities can only be overcome in one of two ways: the notes must bear a strong resemblance, in terms of the four factors considered in the Reves decision, to one of the judicially created categories of notes that do not qualify as securities,[2] or the notes must *593 have characteristics that, after considering the four Reves factors, weigh in favor of adding the notes as a new category to the enumerated list of non-securities. Id.
The four Reves factors that determine the note’s status as a security are: (1) “the motivations that would prompt a reasonable seller and buyer to enter into [the transaction],” (2) “the -‘plan of distribution’ of the instrument,” (3) “the reasonable expectations of the investing public,” and (4) “whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.” Id. at 66-67, 110 S.Ct. 945 (quotation omitted). In the present case, the defendants do not argue that the promissory notes bear a strong resemblance to any of the notes that the Supreme Court has explicitly identified as being non-securities. Thus, the only question at issue in this case is whether the promissory notes should be added as a new categoiy of non-securities — a question that turns solely on the four factors articulated in Reves.
Unlike the majority, I believe that the first Reves factor — the motivations that would prompt reasonable parties to enter into the transaction — weighs in favor of the notes being securities. The Supreme Court explained in Reves that the first factor suggested that the notes were securities because “[the issuer] sold the notes in an effort to raise capital for its general business operations, and purchasers bought them in order to earn a profit in the form of interest.” Id. at 67-68, 110 S.Ct. 945 (footnote omitted); see also Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 812 (2nd Cir.) (“The inquiry is whether the motivations are investment (suggesting a security) or commercial or consumer (suggesting a non-security).”), cert. denied, 513 U.S. 963, 115 S.Ct. 425, 130 L.Ed.2d 339 (1994). Like the parties in Reves, both of the parties in this case were motivated by investment considerations: Technigen issued the notes to obtain capital for its general business and manufacturing operations, and Bass purchased the notes because he hoped to earn a profit in the form of interest on the notes. Joint Appendix (“J.A.”) at 951-52 (Bass Test.).
The second factor requires an examination of the plan of distribution for the notes. If the notes are offered and sold to a broad segment of the public or if the notes are instruments that are commonly traded for speculation or investment, then this factor suggests that the notes are securities. Reves, 494 U.S. at 66, 110 S.Ct. 945. In the present case, this factor weighs against the notes qualifying as securities. Bass acknowledges that “unlike in the Reves case, the particular note [that he received] was not itself widely issued.” Bass’s Reply Br. at 7. Indeed, as the magistrate judge explained, “The only solicitation connected with the note was directed toward plaintiff and was done in a limited and private manner.” J.A. at 473 (Magistrate Judge’s Report and Recommendation (“R & R”) at 21).
The third factor addresses the reasonable expectations of the investing public. The magistrate judge concluded that “[t]his factor is not particularly helpful because there was no investing public in this case, there was only plaintiff.” J.A. at 473-74 (Magistrate Judge’s R & R at 21-22). The third Reves factor, however, is an objective test that turns on whether a reasonable purchaser would have perceived the notes to be an investment. Reves, 494 U.S. at 68-69, 110 S.Ct. 945. It therefore makes little difference that there was only one investor in this case because *594 the fact that the notes were offered only to Bass does not affect the objective expectations of a reasonable purchaser in his position.
I believe that a reasonable purchaser in Bass’s position would have considered the notes to be securities. First, the sellers in this case explicitly designated the notes as securities. J.A. at 116 (Mem. of Financing Terms). As the District of Columbia Circuit explained, “When a note seller calls a note an investment, in the absence of contrary indications ‘it would be reasonable for a prospective purchaser to take the [offeror] at its word.’ ” Stoiber v. Securities and Exchange Commission, 161 F.3d 745, 751 (D.C.Cir.1998) (quoting Reves, 494 U.S. at 69, 110 S.Ct. 945) (alteration in original), cert. denied, — U.S. -, 119 S.Ct. 1464, 143 L.Ed.2d 549 (1999). Moreover, Bass has testified that the defendants referred to the notes as securities when they contacted him about the investment. Thus, the evidence, when considered in the light most favorable to Bass, demonstrates that a reasonable purchaser would have considered the notes to be investments given the circumstances in this case.
The fourth factor assesses whether there is some risk-reducing factor that suggests that the instruments were not in fact securities. Reves, 494 U.S. at 69-70, 110 S.Ct. 945. When analyzing the fourth factor in Reves, the Supreme Court mentioned that the notes in that case were “uncollateralized and uninsured.” Id. at 69, 110 S.Ct. 945. The Court then went on to conclude that the fourth factor weighed in favor of the notes being securities because the notes “would escape federal regulation entirely if the [1933 and 1934] Acts were held not to apply.” Id. The magistrate judge in the present case, apparently focusing on the Supreme Court’s statement that the notes in Reves were uncolla-teralized, concluded that the fourth factor weighed against a finding that the notes were securities because “[i]n the present case plaintiff sought to obtain, and did obtain, certain collateral in order to reduce his exposure to loss.” J.A. at 474 (Magistrate Judge’s R & R at 22).
Several circuit courts, however, have not focused on whether the loans were secured or collateralized when considering the fourth factor; instead, they have interpreted the Supreme Court’s analysis of the fourth factor in Reves to emphasize whether there is a risk-reducing factor such as another regulatory scheme that reduces the risk of the investment. Stoiber, 161 F.3d at 751 (“The fourth and final inquiry looks to the adequacy of regulatory schemes other than the federal Securities Acts in reducing risk to the lender.”); Wright v. Downs, 1992 WL 168104, *3 (6th Cir.1992) (unpublished) (“[T]he fourth factor is whether some regulatory scheme exists to reduce the risk of the investment.”); see also Pollack, 27 F.3d at 814-15. In this case, the defendants have provided no evidence to show that there is another regulatory scheme available to reduce the risk of Bass’s investment other than federal and state securities laws. Furthermore, the lien that Bass received as collateral was insufficient to reduce significantly the risk of his investment. Thus, the fourth factor weighs in favor of the notes being securities in this case.
The defendants have failed to rebut the presumption of the “family resemblance” test, which initially considers all notes to be securities, because the notes in this case do not resemble any of the non-securities enumerated in Reves and an examination of the four factors does not indicate that the notes should be added to the list of non-securities. Although the second factor — the method of distribution— weighs against the notes being considered securities, this factor alone is not disposi-tive. See Stoiber, 161 F.3d at 752 (“Admittedly the plan of distribution in part signals that the notes might not be securities, but that factor by itself is not dispositive.”); Trust Co. of Louisiana v. NNP Inc., 104 F.3d 1478, 1489 (5th Cir.1997) (“A debt instrument may be distributed to but *595 one investor, yet still be a security.”)- The fact that Bass and Teehnigen entered into the transaction for investment reasons combined with the fact that there are no risk-reducing factors other than federal and Tennessee securities laws weigh in favor of the notes being securities. Because the defendants have failed to rebut the presumption that the notes are securities, I would hold that the district court erred when it concluded that the promissory notes at issue in this case do not qualify as securities for the purpose of federal and Tennessee securities laws.

. The Supreme Court has repeatedly held that " '[l]he definition of a security in § 3(a)(10) of the 1934 Act, ... is virtually identical [to the definition in the Securities Act of 1933] and, for present purposes, the coverage of the two Acts may be considered the same.’ ” Reves, 494 U.S. at 61 n. 1, 110 S.Ct. 945 (quotation omitted). Furthermore, the Tennessee statutory definition of the term “security” is virtually identical to the definition in the 1934 Act. See Tenn.Code Ann. § 48-2-102(12).

. Those notes that, according to the Supreme Court, are not securities include:
[T]he note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the *593 note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, [ ] a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateral-ized)!,and] ... notes evidencing loans by commercial banks for current operations.
Reves, 494 U.S. at 65, 110 S.Ct. 945 (quotations omitted).